### United States District Court
### District of Massachusetts

```
_____
                              )
YONG LI,                      )
          Plaintiff,          )
                              )
          v.                  )        Civil Action No.
                              )        08-11405-NMG
DR. JULIA M. READE            )
          Defendant.          )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff, Yong Li ("Li"), is a former software engineer for Raytheon Company ("Raytheon") of Chinese descent.  The defendant, Dr. Julia M. Reade ("Dr. Reade"), is a forensic psychiatrist at Massachusetts General Hospital.  Li brings claims for 1) discrimination on the basis of race and national origin in violation of 42 U.S.C. § 1981, 2) a violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A as defined by ch. 93, § 98 and 3) defamation.  She seeks recovery for lost worker's compensation benefits, emotional distress and punitive damages.

### I.   <u>Factual Background</u>

This dispute arises out of Dr. Reade's mental health evaluation of Li which was conducted at the direction of Li's former employer, Raytheon.  Li claims that she will offer the following evidence.  In 1998, she was hired by Raytheon to work

-1-

in its Air Traffic Control Division in Marlborough, Massachusetts.  She received positive employment evaluations until, in 2002, she filed an internal complaint alleging discrimination by female supervisors.  Raytheon conducted a internal investigation and found that no discrimination had occurred.  Shortly thereafter, Li transferred to the Langley, Virginia office but returned to Marlborough after only one year.

Upon her return, Li alleges that she was subjected to "wide spread retaliation", including physical intimidation and threats that her employment would be terminated.  Li expressed her safety concerns to Raytheon's human resources department which, in turn, scheduled her for a mental health evaluation in August, 2004. During that meeting, the evaluator, John Didio, asked Li "Do you want to kill someone or do you want to kill yourself?".  That question allegedly traumatized Li.  She then emailed Raytheon's CEO stating, for example, that her brain had been poisoned by the comment that "THIS IS MURDER! SLOWLY!".  As a result, on August 31, 2004, Raytheon placed Li on administrative leave and ordered her to see Dr. Reade for a mental evaluation.

Dr. Reade concluded that Li suffered from a mental illness and was not fit to work.  Li takes issue, however, with many aspects of Dr. Reade's report which she maintains are false or incomplete and motivated by a discriminatory bias.  She alleges, for example, that Dr. Reade attributed Li's mental condition to

-2-

her cultural background and language barrier.  Li claims that Dr. Reade's report was based on the report of Mattie Ervin, a Raytheon investigator.

Li subsequently brought a worker's compensation claim, alleging that her need for administrative leave was the result of discriminatory treatment by her supervisors and co-workers and her meeting with John Didio.  A Department of Industrial Accidents judge adopted Dr. Reade's findings in his dismissal of Li's worker's compensation claim in July, 2007.

Dr. Reade expects that the evidence will substantiate her report and refute Li's allegations of any discrimination.  She expects that documents will demonstrate a tumultuous employment relationship with Raytheon.  With respect to her evaluation, Dr. Reade met with Li and her husband for nearly four hours in October, 2004.  Li told her that there was a conspiracy at Raytheon, that she was in mortal danger and that her supervisor was capable of influencing people and having her murdered.  Dr. Reade also noted that Li had some difficulty expressing herself in English, her second language.  As a result, Dr. Reade wrote a report diagnosing a psychotic-level disorder and recommending treatment.

## II.  **Procedural History**

After two re-assignments, this case was transferred to this session in November, 2008.  Dr. Reade filed a motion to dismiss

that same month on the grounds that 1) Li's complaint fails to establish a contractual relationship (a necessary element of a § 1981 claim) and 2) § 1981 does not apply to discrimination on the basis of national origin. She also requested that the Court dismiss Li's remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). The Court denied Dr. Reade's motion in April, 2009, finding that 1) a sufficient contractual relationship could be inferred from a liberal reading of Li's allegations and 2) Li's reliance on her Chinese ancestry did not negate her claim of racial discrimination because race and ethnicity are closely tied.

A pretrial conference was held on June 30, 2010, at which time Li appeared pro se. The Court strongly urged her to retain counsel but scheduled the trial to commence, in any event, on October 12, 2010. On July 9, 2010, this Court issued a Memorandum & Order denying Li's motion to proceed in forma pauperis and allowing Dr. Reade's motion to continue trial and for an extension of time to file a motion for summary judgment. Li has since retained counsel and her motions to amend the complaint by adding a malpractice charge and for clarification of the defamation charge have been denied. On September 3, 2010, Dr. Reade filed a motion for summary judgment which has been opposed by the plaintiff. Trial is still scheduled to begin on Tuesday, October 12, 2010.

-4-

III. **Analysis**

A.   **Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)(quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted." Id.  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's

-5-

favor.  O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).

Summary judgment is appropriate if, after viewing the record in

the non-moving party's favor, the Court determines that no

genuine issue of material fact exists and the moving party is

entitled to judgment as a matter of law.

**B.    Application**

**1.    Count I: Racial Discrimination in Violation of 42 U.S.C. § 1981**

Li alleges that Dr. Reade intentionally discriminated

against her based on her race in violation of 42 U.S.C. § 1981 by

not diagnosing her with post-traumatic stress disorder ("PTSD")

arising from her meeting with John Didio and thereby preventing

her from obtaining worker's compensation benefits.

**a.    Legal Standard**

42 U.S.C. § 1981(a) provides that:

> All persons within the jurisdiction of the United States
> shall have the same right in every State and Territory to
> make and enforce contracts . . . as is enjoyed by white
> citizens[.]

In order to prevail on such a claim, Li must prove that 1)

she is a member of a protected class, 2) Dr. Reade purposefully

discriminated against her based on her race and 3) that

discrimination interfered with her right to make or enforce a

contract.  Green v. Dillard's, Inc., 483 F.3d 533, 538 (7th Cir.

2007); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 17

(1st Cir. 1989).

### b.  Application

The Court finds that Li has not made out a prima facie case for her race discrimination claim because she has produced no evidence that Dr. Reade intentionally discriminated against her on the basis of her race.  The parties do not dispute any of the facts that are material to the analysis of discriminatory intent and summary judgment is, therefore, appropriate.

Discriminatory intent may be established either directly or indirectly.  Direct evidence of discrimination includes racial insults that, on their face, prove a discriminatory motive.  See, e.g., Gregory v. Dillard's, Inc., 494 F.3d 694, 703-04 (8th Cir. 2007); Ackerman v. Food-4-Less, No. 98-CV-1011, 1998 WL 316084, at *2 (E.D. Pa. 1998); Shen v. A & P Food Stores, No. 98 CV 1184, 1995 WL 728416, at *2 (E.D.N.Y. 1995).  In order to prove discriminatory intent indirectly, Li must produce evidence that Dr. Reade's practices exhibited a pattern of systematic discrimination.  To do so, Li must produce some evidence that Dr. Reade would have come to a different conclusion and written a different report for a similarly situated white person.  See, e.g., Gregory, 494 F.3d at 704; Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 871 (6th Cir. 2001); Dartmouth Review, 889 F.2d at 19.

There is no direct evidence that Dr. Reade intentionally

discriminated against Li because of her race or national origin
in producing her written reports and diagnosis.  In her report,
Dr. Reade states that

> Ms. Li has also had some difficulty expressing herself
> (and understanding others) in English, a second
> language for her, and concerns were raised that some of
> her interpersonal problems might be exacerbated by a
> language or cultural barrier.

Later in the report, Dr. Reade writes that, during the interview,

> Ms. Li spoke in heavily accented and broken English.
> She appealed to her husband to serve as translator,
> even at times when she clearly understood my meaning,
> or could answer the question on her own. . . .  Ms. Li
> appeared to understand almost all of the questions, and
> was capable of getting her meaning across in English
> when urged to try.

Those statements include neither racially derogatory
comments nor other language that directly proves that Dr. Reade
intentionally discriminated against Li based on her race.  It
appears that Dr. Reade's first comment on Li's status as a non-
native English speaker was drawn from the reports that Raytheon
provided to Dr. Reade and suggested as a possible explanation for
Li's reported history of interpersonal conflict in the workplace.
The second statement was made in order to document Li's ability
to understand and respond to questions during her interview with
Dr. Reade.

Nor is there any indirect evidence that Dr. Reade
intentionally discriminated against Li based on her race or

national origin.  Li has not elicited any evidence that Dr. Reade would come to a different conclusion with respect to a similarly situated white person with the same reports, emails, demeanor and responses to questions.

Li argues that the change from Dr. Reade's October 7, 2004 report, in which she stated that Li understood that the interview was not confidential, to her October 26, 2004 report, in which she discussed Li's difficulty expressing herself in English, is evidence that Dr. Reade's conclusions were racially biased.  This argument is unavailing, however, because it shows neither direct evidence of discriminatory intent nor evidence of a systematic discriminatory practice.

Li also contends that Dr. Reade ignored the traumatic nature of Li's meeting with John Didio, an email from a co-worker stating that Li was not being fairly treated and her four years of good performance reviews.  She implies that Dr. Reade was disproportionately focused on reports of Li's difficulty with English.  Assuming arguendo that Dr. Reade did ignore such information in formulating her report, that omission does not constitute evidence of intent to discriminate on the basis of race.  There is no evidence that race was raised by any of those materials and Li has not proffered any evidence that Dr. Reade would have treated a similarly situated white person differently.

Finally, Li argues that even a neutral decision-maker can be

held liable for discrimination if he or she negligently relied on biased information.  She claims that Dr. Reade had a professional duty to verify all information on which she was basing her opinion and that she was biased because she was hired by Raytheon.  She alleges that Dr. Reade "completely and totally adopted Raytheon's internal investigation report of 2002", a report that Li claims she was unaware of, without discussing it with Li.

Under the so-called "cat's paw" theory of liability, an employer may be liable for discrimination where he or she makes an adverse employment decision in reliance on the report of a biased subordinate without conducting an independent investigation, even if the decision-maker did not act with discriminatory animus.  See, e.g., E.E.O.C. v. BCI Coca-Cola Bottling Co. of L.A., 450 F.3d 476, 485-86 (10th Cir. 2006); Cariglia v. Hertz Equip. Rental Corp., 363 F.3d 77, 83 (1st Cir. 2004).

The Court finds that Dr. Reade is not the kind of "decision-maker" who can be held liable under the "cat's paw" theory.  That theory is derived from agency principles and is analogous to the doctrine of respondeat superior which holds principals liable for the tortious acts of their agents committed within the scope of employment.  Merlonghi v. U.S., No. 09-2387, 2010 WL 3547421, at *3 (1st Cir. Sept. 14, 2010); E.E.O.C., 450 F.3d at 485.  The

-10-

"cat's paw" theory was developed to prevent employers from evading liability "through willful blindness as to the source of reports and recommendations." <u>E.E.O.C.</u>, 450 F.3d at 485-86. This rationale does not apply to Dr. Reade because Raytheon is not her agent, she is not Raytheon's employer and she has no control over the company's actions. Dr. Reade, therefore, will not be held vicariously liable for discriminatory acts by Raytheon, if any.

Moreover, even if Dr. Reade negligently relied on biased information, mere negligence does not support a claim for intentional discrimination under 42 U.S.C. § 1981. <u>See</u> <u>Dartmouth Review</u>, 889 F.2d at 17.

Even reading the record in Li's favor, there is no evidence suggesting that Dr. Reade intentionally discriminated against her on the basis of her race. For that reason, the defendant's motion for summary judgment will be allowed with respect to Count I.

          **2.    Count II: Unfair and Deceptive Act or Practice in Violation of Mass. Gen. Laws ch. 93A, as Defined by ch. 93, § 98**

Li argues that Dr. Reade engaged in four unfair and deceptive acts:  1) refusing to tell Li her findings, 2) issuing the October 26, 2004 report without Li's informed consent, 3) exceeding the scope of a "fitness for duty" evaluation in her report and 4) selectively choosing incidents or fabricating

evidence to cover up Raytheon's misconduct.  Li alleges that Dr. Reade's report interfered with her receipt of worker's compensation benefits because Dr. Reade did not find that Li suffered from PTSD as a result of her employment at Raytheon.

Dr. Reade maintains that she should be granted summary judgment on Count II because Li has produced no evidence of retaliation or conspiracy as required by the statute.

### a.   Legal Standard

Under Mass. Gen. Laws ch. 93, § 98, it is an unfair and deceptive act or practice in violation of the Consumer Protection Act (Mass. Gen. Laws ch. 93A) for a provider of health care services, or any of its agents, employees or other representatives to "[r]etaliate against a person whose name is contained in a plaintiff personal injury listing" or "[c]onspire with any subscriber or provider of health care services to retaliate" against such a person

> by refusing to provide, or refusing to continue to provide, or otherwise interfering with the provision of health care services to the named person . . . or by any other manner of discrimination against such person in the provision of health services.

It is also an unfair and deceptive act under the statute to retaliate against a plaintiff in a personal injury listing by

> refusing to enroll, insure, or allow to participate in any plan for the provision of health care services the named person . . . or by any other manner of discrimination against such person in the provision of health services.

Mass. Gen. Laws ch. 93, § 98.

**b.   Application**

Even if the acts of Dr. Reade were unfair and deceptive, Li has not alleged any facts that, if true, would prove that Dr. Reade conspired with a health care provider or retaliated against Li with regard to the provision of health services, as proscribed by the statute.  There is no evidence that Dr. Reade knew that Li planned to file a worker's compensation claim, which was not filed until 2005, or that her report would be used in connection with litigation.  Thus, Li has failed to state a claim upon which relief can be granted under Mass. Gen. Laws ch. 93, § 98 and the Court will allow Dr. Reade's motion for summary judgment on Count II.

**3.   Count III: Defamation**

**a.   Legal Standard**

For an individual to prevail on a claim of defamation in Massachusetts, the plaintiff must prove that

> (1) the defendant published a false and defamatory statement concerning the plaintiff; (2) the defendant was negligent in ascertaining whether the statement was true before publishing it; and (3) the plaintiff suffered actual injury or harm as a result of the publication.

Oort v. DaSilva, No. 02-4041, 2004 WL 2070977, at *3 (Mass. Super. Sept. 15, 2004).

b.    **Application**

(1)    **Whether the Challenged Statements are Expressions of Opinion or Fact**

Dr. Reade argues that she should be granted summary judgment on Li's defamation claim because the findings in her report were her professional opinion, not statements of fact.

Only statements of fact are actionable under the tort for defamation.  Statements of pure opinion are protected under the First Amendment to the United States Constitution.  <u>King</u> v. <u>Globe Newspaper Co.</u>, 512 N.E. 2d 241, 243 (Mass. 1987).  A statement of opinion is actionable only if "it implies the allegation of undisclosed defamatory facts as the basis for the opinion."  <u>Lyons</u> v. <u>Globe Newspaper Co.</u>, 612 N.E. 2d 1158, 1161 (Mass. 1993).

Whether a statement constitutes fact or opinion is a question of law for the Court if it is unambiguously one or the other.  <u>Id.</u>  Thus, the defendant is entitled to summary judgment "if the challenged statement cannot reasonably be construed as a statement of fact."  <u>Id.</u>  In making that determination, the Court must

> examine the statement in its totality in the context in which it was uttered or published.  The court must consider all the words used, not merely a particular phrase or sentence.  In addition, the court must give weight to cautionary terms used by the person publishing the statement.  Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is

-14-

published.

Id. at 1162 (quoting Fleming v. Benzaquin, 454 N.E. 2d 95 (Mass. 1983)).

In her opposition to Dr. Reade's motion for summary judgment, Li lists the following five statements from Dr. Reade's report that she claims are false and defamatory statements of fact:

1) During this time, the employee recalled suffering from homesickness, anxiety symptoms, and severe sleep disruption. Reportedly at the suggestion of her physician, she began taking Ibuprofen to "make me calm down"...

2) According to the records and Ms. Li, she has done a mostly good job performing the technical aspects of her job, but has a history of interpersonal conflict...

3) Most recently, Ms. Li grew alarmed that she might be included in a layoff, and began sending incendiary emails to coworkers about how she had been treated during her tenure at Raytheon, and intimating that her life was being threatened.

4) Ms. Li complained that these symptoms persisted for the 10 months of her assignment and remitted only several months after she had returned home. Ms. Li also stayed out of work for three weeks during this period for unclear reasons.

5) Ms. Li repeatedly returned to the subject of a "conspiracy" at work. Specifically, she believes that Jen Lewis, a former supervisor, is plotting against her and could have her murdered or fired.

It is either explicitly stated or readily implied from each statement that the information presented comes from either Dr. Reade's interview with Li or the materials submitted by Raytheon.

Dr. Reade does not indicate in the statements themselves or in other parts of the report that they are her opinion.  Thus, after considering all of the circumstances surrounding Dr. Reade's report and the report itself, the Court finds that these statements are unambiguously statements of fact.

                    (2)   **Whether Dr. Reade's Statements of Fact**
                          **are Defamatory**

     A defamatory statement "is one that would tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community." Broomes v. Blue Cross Blue Shield of Mass., No. 06-3534-C, 2008 WL 517383, at *6 (Mass. Super. Jan. 4, 2008).  Attributing a false quotation to another can be a defamatory statement.  The United States Supreme Court has stated that:

>     A fabricated quotation may injure reputation in at
>     least two senses, either giving rise to a conceivable
>     claim of defamation.  First, the quotation might injure
>     because it attributes an untrue factual assertion to
>     the speaker. . . .
>
>     Second, regardless of the truth or falsity of the
>     factual matters asserted within the quoted statement,
>     the attribution may result in injury to reputation
>     because the manner of expression or even the fact that
>     the statement was made indicates a negative personal
>     trait or an attitude the speaker does not hold.

Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 511-512 (1991).

     Both kinds of injury described by the United States Supreme Court in Masson v. New Yorker Magazine, Inc. are possible in the

instant case.  If the factual assertions that Li allegedly made to Dr. Reade are untrue, then Dr. Reade's report portrays Li as a dishonest person.  Moreover, the challenged statements attribute either conduct or statements to Li which reflect on her mental health and competence for employment.  Thus, the Court finds that the statements are potentially defamatory.

        **(4)   Whether Dr. Reade's Statements are False and Whether Dr. Reade Exercised Reasonable Care in Determining the Truth or Falsity of the Statements**

In order for Li to prevail on her defamation claims, the trier of fact must find that Dr. Reade's statements are false and that Dr. Reade was negligent in failing to ascertain the truth or falsity of the statements.  Because Dr. Reade has presented no evidence other than her report that the statements are true, the accuracy of the five statements is a genuine issue of material fact and the entry of summary judgment would be inappropriate.

All but the second statement quoted above summarize factual assertions that Dr. Reade claims Li made during the interview. With respect to the first statement, Li admits that she told Dr. Reade that she felt homesick and had trouble sleeping for which she took one-half of an over-the-counter sleeping pill each night.  A genuine issue of material fact exists, however, as to whether Li told Dr. Reade that she took the Advil for anxiety and to calm her down.  With respect to the third statement, Li admits that she sent emails to co-workers in connection with a rumored

lay-off but the accuracy of the rest of the statement is a
genuine issue of material fact.  The accuracy of the fourth and
fifth statements in their entirety are genuine issues of material
fact.

The second statement appears to be based on materials
provided by Raytheon to Dr. Reade, including Li's performance
reviews, email correspondence and job description and a letter
from a social worker regarding her evaluation of Li.  Li admits
in her response to Dr. Reade's statement of material facts that
there was a "tumultuous employment relationship" and confirms in
the pleadings that, in 2001, there was a disagreement between Li
and her colleagues which led to an internal discrimination
complaint by Li.

Although there is evidence suggesting that the second
statement is true and that Dr. Reade was reasonable in relying on
the Raytheon material, the Court will draw all inferences in
favor of the non-moving party.  It is reasonable to infer that
there was only one conflict and not a "history of interpersonal
conflicts" and that Li did not tell Dr. Reade that there was such
a history.  Thus, there is a genuine issue of material fact with
respect to the accuracy of the second statement.

For those reasons, the Court will deny the Defendant's
motion for summary judgment with respect to Li's defamation
claim.

**ORDER**

In accordance with the foregoing, the Defendant's

motion for summary judgment is:

1) with respect to the plaintiff's claims for intentional
discrimination on the basis of race in violation of 42
U.S.C § 1981 (Count I) and unfair and deceptive acts or
practices in violation of Mass. Gen. Laws ch. 93A as
defined by ch. 93, § 98 (Count II), **ALLOWED,** and

2) with respect to the plaintiff's claim for defamation
(Count III), **DENIED.**


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 29, 2010